IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARVEL JONES,<br><br>                    Petitioner,<br><br>          vs.<br><br>DON WHITMIRE,<br><br>                    Respondent. | **8:20CV81**<br><br>**MEMORANDUM AND ORDER** |
| MARVEL JONES,<br><br>                    Petitioner,<br><br>          vs.<br><br>DON WHITMIRE,<br><br>                    Respondent. | **8:20CV275**<br><br>**MEMORANDUM AND ORDER** |

These consolidated cases are before the court on Petitioner Marvel Jones' ("Petitioner" or "Jones") Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254. (Filing 1, Case No. 8:20CV81; Filing 1, Case No. 8:20CV275.) For the reasons that follow, Petitioner's habeas petition is denied and dismissed without prejudice.

## I. CLAIMS

Summarized and condensed,[1] and as set forth in the court's prior progression order (filing 13)[2], Petitioner asserted the following claims that were potentially cognizable in this court:

---

[1] Petitioner did not object to the court's summary and condensation.

Claim One:        The Lancaster County Board of Mental Health ("mental health board") lacked subject matter jurisdiction to enter a civil commitment order against Petitioner because (1) the August 30, 1996 criminal citation and complaint was not filed in the state county or district court pursuant to Neb. Rev. Stat. § 29-423 (Reissue 2016), and (2) the criminal information filed against him on September 3, 1996, was not filed 24 hours prior to his arraignment as required by Neb. Rev. Stat. § 29-424 (Reissue 2016).

Claim Two:        The mental health board used inadmissible and insufficient evidence to find Petitioner a dangerous sex offender, including evidence of a prior criminal conviction more than 10 years old and an evaluation that was not timely completed prior to Petitioner's release from prison.

Claim Three:      The county attorney failed to investigate the evidence prior to filing a petition with the mental health board.

Claim Four:       Petitioner was denied effective assistance of counsel because his appointed counsel had a conflict of interest and failed to raise the following issues before the mental health board, the state district court, and the appellate courts: (1) subject matter jurisdiction; (2) inadmissible evidence; (3) insufficient evidence; (4) the county attorney's failure to investigate the evidence; (5) the mental health board used inadmissible and insufficient evidence against Petitioner; and (6) the county attorney

---

[2] Unless otherwise noted, all citations are to the lead case, 8:20CV81.

used inadmissible and insufficient evidence against Petitioner.

## II. BACKGROUND

Much of the background information is derived from Respondent's Brief in Support of Answer (filing 34), as it includes a thorough discussion of Jones' state court proceedings with appropriate citations to the records in the Designation (filings 21 & 23).

### A. 1997 Conviction and Previous Federal Habeas Cases

In 1997, Jones was convicted of first degree sexual assault of a child in the District Court of Lancaster County, Nebraska, and was sentenced to 25 to 40 years' imprisonment (hereinafter "1997 conviction"). (Filing 21-11 at CM/ECF p. 2; Filing 23-1 at CM/ECF p. 5.) The Nebraska Court of Appeals affirmed Jones' conviction in *State v. Jones*, 577 N.W.2d 302 (Neb. Ct. App. 1998). This was Jones' third conviction for a sexual offense perpetrated on a child. (Filing 21-11 at CM/ECF p. 2.)

Jones has brought at least three habeas corpus actions in this court challenging his 1997 conviction. Jones filed his first federal habeas petition on January 3, 2000. *See Jones v. Kenney*, Case No. 4:00CV3002 (D. Neb.) (Filing 1). On April 27, 2000, the court adopted the report and recommendation of a magistrate judge and denied and dismissed Jones' habeas petition with prejudice. (Filings 13 & 14, Case No. 4:00CV3002). Jones did not prosecute an appeal from the denial of his habeas petition.

On March 4, 2003, Jones filed another petition for federal habeas relief attacking his 1997 conviction. *See Jones v. Britten*, Case No. 4:03CV3083 (D. Neb.) (Filing 1). The court acknowledged that Jones had filed a previous habeas petition in *Jones v. Kenney*, Case No. 4:00CV3002, and dismissed his successive

petition without prejudice to reassertion of a subsequent petition upon certification from the Eighth Circuit Court of Appeals as required by 28 U.S.C. § 2244(b)(3). (Filings 6 & 7, Case No. 4:03CV3083). Jones' subsequent applications for permission to file a successive habeas petition were denied by the Eighth Circuit Court of Appeals. (Filings 9 & 11, Case No. 4:03CV3083.)

Jones filed a third petition for habeas relief on January 3, 2014, in which he again challenged his 1997 conviction for first degree sexual assault of a child. *See Jones v. Gage*, Case No. 8:14CV01 (D. Neb.) (Filing 1). On January 8, 2014, the court dismissed Jones' petition because it was a successive petition attacking the same conviction and sentence already challenged in *Jones v. Kenney*, Case No. 4:00CV3002, and *Jones v. Britten*, Case No. 4:03CV3083. (Filings 11 & 12, Case No. 8:14CV01.) Jones prosecuted an appeal to the Eighth Circuit Court of Appeals, and the Court denied him a certificate of appealability and dismissed his appeal on September 25, 2014. (Filing 25, Case No. 8:14CV01.)

## B. 2018 Commitment and Appeal

Jones is currently a patient committed to the Norfolk Regional Center ("NRC") pursuant to Nebraska's Sex Offender Commitment Act, Neb. Rev. Stat. §§ 71-1201 to 71-1226 ("SOCA"). On June 26, 2018, a Deputy Lancaster County Attorney ("County Attorney") filed a petition before the Mental Health Board of the Third Judicial District in Lancaster County, Nebraska ("Mental Health Board"), requesting that Jones be adjudged a dangerous sex offender under the SOCA. (Filing 23-1 at CM/ECF pp. 5–8.) At the time the petition was filed, Jones was in the custody of the Nebraska Department of Correctional Services ("NDCS") and nearing completion of his sentence for his 1997 conviction with a projected release date of July 5, 2018. (*Id.* at CM/ECF p. 23.) The petition alleged that Jones is a dangerous sex offender with a mental illness and/or a personality disorder which makes him likely to engage in repeated acts of sexual violence. (*Id.* at CM/ECF p. 5.) The petition further alleged that Jones had been convicted of the following sex offenses:

4

a. Sexual Assault - Second Degree, after pleading guilty to the charge on or about August 28, 1978, and being sentenced on or about September 29, 1978 in the District Court of Lancaster County, Nebraska, at Docket 51, Page 67;

b. First Degree Sexual Assault of a Child, after being found guilty by a jury on or about January 25, 1980, and being sentenced on or about Octoer [sic] 5, 1983 in the District Court of Lancaster County, Nebraska, at Docket 53, Page 236[;]

c. First Degree Sexual Assault – Second Offense, after being found guilty by a jury on or about March 3, 1997, and being sentenced on or about April 2, 1997 in the District Court of Lancaster County, Nebraska, at Docket 693, Page 233[.]

(*Id*.) The petition also alleged that Jones is substantially unable to control his criminal behavior, and that neither voluntary hospitalization nor other treatment alternatives less restrictive of Jones' liberty than a Mental Health Board ordered treatment disposition were available or would suffice to prevent the harm described in Neb. Rev. Stat. § 83-174.01. (*Id*. at CM/ECF pp. 5–6.)

Attached to the petition was an affidavit by Agnes Stairs, Ph.D. ("Dr. Stairs")—a psychologist licensed by the State of Nebraska and employed by NDCS who is experienced in sex offender risk assessment. (*Id*. at CM/ECF p. 9; Filing 23-3, Mental Health Board Bill of Exceptions (hereinafter "Board BOE") 21:22–22:2, at CM/ECF pp. 62–63.) Dr. Stairs attached to her affidavit an evaluation she completed of Jones which was limited to "only file review and consideration of collateral information due to Mr. Jones' refusal to participate in the interview portion" of the evaluation on February 14, 2018. (Filing 23-1 at CM/ECF pp. 9–10; Filing 23-3, Board BOE 29:2–12, at CM/ECF p. 70.) In her affidavit, Dr. Stairs stated that, in her professional opinion, based upon her expertise in sex offender risk assessment and treatment and the information available to her, Jones was a dangerous sex offender as defined by Nebraska law,

and that Jones would best be served in an inpatient setting to address the issues outlined in her SOCA evaluation. (Filing 23-1 at CM/ECF pp. 9–10.)

### 1. Mental Health Board Hearing

On August 2, 2018, the Mental Health Board held a hearing on the petition to consider Jones' potential confinement under the SOCA. (Filing 23-1 at CM/ECF p. 24; Filing 23-3 at CM/ECF pp. 46–145.) The County Attorney appeared at the hearing and Jones was present with his counsel, Kristi Egger, a Deputy Lancaster County Public Defender. (Filing 23-1 at CM/ECF p. 24; Filing 23-3, Board BOE 5:13–15, at CM/ECF p. 46.) At the beginning of the hearing, Jones' counsel informed the Mental Health Board that Jones denied the allegations, was objecting to the proceedings, and that he wished to represent himself with his attorney appointed as his standby counsel. (Filing 23-3, Board BOE 6:4–15, at CM/ECF p. 6.) Jones asserted that the Public Defender's Office should not be allowed to represent him because he claimed that office had a conflict of interest stemming from its representation of Jones in his 1997 conviction. (*Id*., Board BOE 9:4–14, 11:16–25, at CM/ECF pp. 50, 52.) Upon inquiry from the Mental Health Board, Jones' counsel, Ms. Egger, stated that her office looked to see if there were any internal conflicts, and none were found. (*Id*., Board BOE 8:8–18, at CM/ECF p. 51.) The Mental Health Board gave Jones an opportunity to articulate a conflict of interest that would prevent the Public Defender's Office from representing him (*id*., Board BOE 12:2–14:18, 16:3–19:10, at CM/ECF pp. 53–55, 57–60), but after listening to Jones, the Mental Health Board found no basis for finding such a conflict (*id*., Board BOE 19:12–15, at CM/ECF p. 60). The Mental Health Board indicated that Jones could represent himself with Ms. Egger acting as standby counsel but denied Jones' request to have alternate counsel appointed. (*Id*., Board BOE 19:15–17, 20:24–25, at CM/ECF pp. 60–61.) The hearing proceeded with Ms. Egger acting as Jones' primary counsel and no further statements or objections from Jones. (*Id*. at CM/ECF pp. 64–145.)

The County Attorney called Dr. Stairs as a witness. (*Id.*, Board BOE 21:3–4, at CM/ECF p. 21.) On direct examination, Dr. Stairs testified that, based upon her training, experience, and information that she had reviewed in evaluating Jones, it was her professional opinion—to a reasonable degree of psychological certainty—that 1) he met the definition of "dangerous sex offender" as provided by Neb. Rev. Stat. § 83-174.01, 2) the least restrictive treatment option for Jones would be inpatient treatment, and 3) nothing other than inpatient treatment would be sufficient to prevent the harm Dr. Stairs described in her earlier testimony based on Jones' history and lack of cooperation in previous treatment settings. (*Id.*, Board BOE 66:8–68:6, at CM/ECF pp. 107–109.)

Once Dr. Stairs' direct examination was concluded, Jones' counsel conducted cross examination and recross examination. (*See Id.* at CM/ECF pp. 109–32, 137–40.) Jones' counsel also reserved the right to recall Dr. Stairs after an opportunity to review additional documentation. (*Id.*, Board BOE 90:13–91:9, 99:20–25, at CM/ECF pp. 131–32, 140.) The County Attorney then offered Exhibits 2, 3, and 4, certified copies of Jones' sex offense convictions. (*Id.*, Board BOE 101:16–25, at CM/ECF p. 142.) Jones' counsel objected to the Mental Health Board receiving any of the three exhibits and specifically objected to Exhibits 3 and 4 because Jones maintained his innocence of those charges. (*Id.*, Board BOE 102:2–4, 7–9, at CM/ECF p. 143.) The Mental Health Board received Exhibits 2, 3, and 4 into evidence over Jones' objection. (*Id.*, Board BOE 102:10–17.) Lastly, Jones' counsel asked that the hearing be continued to allow Jones to secure the appearance of Victoria Nicholas, a NDCS employee, to testify on his behalf. (*Id.*, Board BOE 103:5–7, at CM/ECF p. 144.) The Mental Health Board granted the request, and the case was continued to August 21, 2018. (*Id.* at CM/ECF p. 145.) Once again, no objection or statement was made by Jones to his counsel's actions on his behalf.

On August 21, 2018, the Mental Health Board reconvened for Jones' case. (*Id.*, Board BOE 105:2–6, at CM/ECF p. 146.) The County Attorney appeared, as did Jones and his counsel. (*Id.*, Board BOE 105:17–19.) When the Chairperson

7

asked counsel to enter their appearances for the record, Jones' counsel responded, "Kristi Egger for Mr. Jones." (*Id*., Board BOE 105:19.) Jones made no statement or objection to his counsel entering her appearance on his behalf. (*See Id*. at CM/ECF pp. 146–49.)

At that time, rather than calling Ms. Nicholas to testify, Jones' counsel offered an e-mail from Ms. Nicholas as an exhibit that was received without objection. (*Id*., Board BOE 107:15–108:8, at CM/ECF pp. 148–49.) Next, Jones' counsel called Jones to testify on direct examination. (*Id*. at CM/ECF pp. 149–90.) At the conclusion of all evidence submitted, Jones' counsel and the County Attorney presented closing arguments. (*Id*., Board BOE 149:24–154:10, at CM/ECF pp. 190–195.) At no point during the August 21, 2018 hearing did Jones reject his counsel's assistance and representation, nor did he make any statement that she was not acting on his behalf. (*See Id*. at CM/ECF pp. 146–95.)

At the conclusion of the August 21, 2018 hearing, the Mental Health Board found that there was clear and convincing evidence that the allegations in the petition were true, Jones is a mentally ill and dangerous sex offender, and neither voluntary hospitalization nor other treatment alternatives less restrictive of his liberty than a Mental Health Board ordered treatment disposition would suffice to prevent the substantial risk of harm as described in Neb. Rev. Stat. § 83-174.01. (*Id*., Board BOE 154:18–155:24, at CM/ECF pp. 195–96; Filing 23-4 at CM/ECF pp. 39–40.) Having considered all treatment alternatives, the Mental Health Board ordered Jones be placed in the custody of the Nebraska Department of Health and Human Services for appropriate sex offender treatment. (*Id*.)

## 2. Appeal to the Lancaster County District Court

On September 6, 2018, Jones' counsel, pursuant to Neb. Rev. Stat. § 71-1214, filed a notice of Jones' intent to appeal the Mental Health Board's August 21, 2018 order to the Lancaster County District Court. (Filing 23-4 at CM/ECF p.

41.) That same day, Jones' counsel filed a Statement of Errors claiming the Mental Health Board erred as follows:

1.   There is insufficient evidence to support a finding by clear and convincing evidence that Mr. Jones is [a] mentally ill and dangerous sex offender in need of board ordered inpatient treatment under the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. § 71-1201 et seq.

2.   The Mental Health Board lacked jurisdiction over the Subject.

3.   The evaluation was untimely and was in violation of Neb. Rev. Stat. § 71-1201 et seq. and § 83-170 et seq.

(*Id.* at CM/ECF p. 42.)

On February 28, 2019, the Lancaster County District Court held a hearing on Jones' appeal. (Filing 23-3 at CM/ECF p. 4.) At the hearing, Jones' counsel, Ms. Egger, and a senior certified law student appeared on behalf of Jones. (*Id.*, District Court BOE at 1:4–8, at CM/ECF p. 4; Filing 23-4 at CM/ECF p. 45.) The County Attorney was present as well. (*Id.*) Jones' counsel offered the Transcript and Bill of Exceptions ("BOE") of the Mental Health Board's August 2 and 21, 2018 hearings into evidence; arguments were heard, and the district court took the matter under advisement. (Filing 23-3 at CM/ECF p. 5–10; *see also* Filing 23-4 at CM/ECF p. 45.)

On March 18, 2019, the district court entered an order affirming the Mental Health Board's August 21, 2018 order. (Filing 23-4 at CM/ECF pp. 45–58.) Specifically, the district court found that Jones is a dangerous sex offender as defined by Nebraska law as he 1) has been diagnosed with a personality disorder, 2) has been convicted of two or more sex offenses, 3) is likely to engage in repeat acts of sexual violence, 4) and is unable to control his behavior. (*Id.* at CM/ECF pp. 52–55.) The district court also concluded that involuntary inpatient treatment is the least restrictive option. (*Id.* at CM/ECF pp. 55–57.) Finally, the district court

found Jones' remaining arguments to be without merit. (*Id*. at CM/ECF pp. 57–58.) These arguments included Jones' assertions that 1) his counsel had a conflict of interest in representing him before the Mental Health Board, 2) that Dr. Stairs' evaluation of Jones was not timely as provided by Nebraska law, and 3) that the Mental Health Board lacked jurisdiction over him. (*Id*.) As such, the district court affirmed the Mental Health Board's August 21, 2018 order.

### 3. Appeal to the Nebraska Court of Appeals

On April 15, 2019, Jones filed a Notice of Appeal with the Nebraska Court of Appeals. (Filing 21-1 at CM/ECF p. 3.) Although Jones was still represented by counsel during his appeal, on June 24, 2019, he filed a separate appellate brief than his counsel and identified himself as a pro se appellant. (Filing 21-2 at CM/ECF p. 1.) In his brief, Jones assigned the following errors:

1.   Whether defects in the untimely filing of the formal uniform citation and complaint precluded the county and district courts, and the Lancaster County Mental Health Board of subject matter jurisdiction of this case.

2.   Whether defects in the untimely filing of the criminal complaint and information precluded the county and district courts, and the Lancaster County Mental Health Board of subject matter jurisdiction of this civil matter.

3.   Whether the rules of evidence applicable in civil proceedings shall apply at all hearings held under the Sex Offender Commitment Act, or shall evidence be considered which is inadmissible in criminal proceedings. Neb. Rev. Stat. § 71-1226 (Reissue 2016); Neb. Rev. Stat. §71-955 (Reissue 2016).

4.   Whether evidence of a conviction under Neb. Rev. Stat. § 27-609(2) (Reissue 2016) is admissible if a period of more than ten years has elapsed since the date of such conviction or of the release of the witness from confinement.

5.      Whether the county attorney should have investigated the evidence pursuant to Neb. Rev. Stat. § 71-1217 (Reissue 2016).

6.      Whether there were [sic] a conflict of interest in representing Appellant by the Lancaster County Public Defender office.

7.      Whether the lack of inadmissible evidence precluded the Lancaster County Mental Health Board order finding that appellant was a dangerous sex offender.

(Filing 21-2 at CM/ECF pp. 6–7.)

On July 1, 2019, Jones' counsel filed a brief on Jones' behalf and assigned the following errors:

1.      There was insufficient evidence for the Board to find Appellant was a dangerous sex offender in need of inpatient treatment, and the District Court erred in upholding the Board's findings.

2.      The evaluation was untimely and the District Court erred in affirming the Board's conclusions.

3.      The Board did not have subject matter jurisdiction over the matter and the District Court erred in confirming the Board's findings.

4.      The Board erred when it ruled there was no conflict of interest and the District Court erred in affirming the Board's findings.

5.      The Board erred when it admitted inadmissible evidence and the District Court erred in sustaining the Board's decisions.

(Filing 21-3 at CM/ECF pp. 6–7.) Subsequently, the Appellee submitted its brief (filing 21-4), followed by Jones filing a reply brief—again identifying himself as a pro se appellant (filing 21-5). On December 31, 2019, the Nebraska Court of Appeals issued its Memorandum Opinion and Judgment on Appeal affirming the decision of the district court. (Filing 21-6.)

11

**4. Petition for Further Review**

On January 17, 2020, Jones filed a petition for further review before the Nebraska Supreme Court. (Filing 23-4 at CM/ECF pp. 2–14.) In that petition, Jones alleged the following errors:

1.  The Appellate Court erred when the Lancaster County and the Mental Health Board were without jurisdiction of this case in affirming the decision of the district court.

2.  The Appellate Court erred when it affirmed the district court's decision that there wasn't a conflict of interest between the Lancaster County Public Defender Miss Kristi J. Egger.

3.  The Appellate Court erred and overlooked Appellant's claim under Neb. Rev. Stat. § 71-1226 inadmissible evidence used by the Mental Health Board.

4.  The Appellate Court erred and overlooked Appellant's claim under Neb. Rev. Stat. § 27-609(2)(3) evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of such conviction.

5.  The Appellate Court erred and overlooked Appellant's claim under Neb. Rev. Stat. § 71-955 whether the rules of evidence applicable in civil proceedings shall apply at all hearings held under the Sex Offender Commitment Act or shall evidence be considered which is inadmissible in criminal proceedings, Neb. Rev. Stat. § 71-1226.

6.  The Appellate Court erred and overlooked Appellant's claim under Neb. Rev. Stat. § 71-1217 whether the county attorney should have investagated [sic] the evidence prior to filing the petition against the Appellate [sic].

7.  The Appellate Court erred and overlooked Appellant's claim that inadmissible evidence precluded the Lancaster County

12

Mental Health Board order finding that Appellant is a dangerous sex offender.

8.     The Appellant [sic] Court erred and overlooked Appellant's claim in his supplemental briefs in the district court and his brief in the Appellate Court.

(Filing 23-4 at CM/ECF pp. 2–4.)

On February 14, 2020, the Court denied Jones' petition for further review. (Filing 21-1 at CM/ECF p. 4.)

## C. 2018 State Habeas Petition and Appeal

On November 19, 2018, Jones, pursuant to Neb. Rev. Stat. §§ 29-2801 and 71-959(9), filed a petition for writ of habeas corpus captioned *Marvel Jones v. Sheri Dawson, Mark Labouchardiere*, CI 18-492, in the District Court of Madison County, Nebraska. (Filing 21-7 at CM/ECF pp. 2–12.) Jones broadly claimed in the introductory paragraph of his petition that he was "being unlawfully deprived of his liberty in violation of his rights guaranteed to him by the Fourth (4th); Fifth (5th); Sixth (6th); and Fourteenth (14th) Amendments to the United States Constitution Article 1, Sections 3, 11, and 12 of the Nebraska Constitution, and the Sex Offender Commitment Act." (*Id.* at CM/ECF p. 2.) However, the crux of Jones' allegations throughout his petition was that his commitment under the SOCA was void because there was an alleged defect in the manner in which the original charging documents were filed in his 1997 conviction for first degree sexual assault of a child. (*Id.* at CM/ECF pp. 3–4; *see also Id.* at CM/ECF p. 25.) According to Jones, the Mental Health Board relied upon incorrect information to support their finding and that he "does not meet the statutory requirements of a dangerous sex offender under Neb. Rev. Stat. § 83-174.01 and therefore is not subject to a civil commitment under the [SOCA]." (*Id.* at CM/ECF p. 5.)

13

On January 28, 2019, the respondents in Jones' state habeas action filed a Motion to Quash Petition for Habeas Corpus and Objection to the Appointment of Counsel. (*Id*. at CM/ECF p. 13.) On March 7, 2019, the district court held a hearing on the respondents' motion and objection. (*Id*. at CM/ECF p. 22.) Jones appeared telephonically and respondents' counsel appeared in person. Arguments were made, and the court took the matter under advisement.

On May 8, 2019, the district court granted the respondents' motion to quash the petition for writ of habeas corpus and denied Jones' request for the appointment of counsel because "review of the Petition reveal[ed] it to be frivolous." (*Id*. at CM/ECF p. 27.) In its order, the district court discussed the scope of state habeas. "Under Nebraska law, an action for habeas corpus is a collateral attack on a judgment of conviction. Only a void judgment may be collaterally attacked. Where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack." (*Id*. at CM/ECF p. 24 (quoting *Gonzalez v. Gage*, 861 N.W.2d 457, 461–62 (Neb. 2015)).) The district court then observed, "Essentially, [Jones] is attempting to collaterally attack the 1997 criminal conviction and the subsequent commitment order." (*Id*. at CM/ECF p. 25.) But "[n]o allegations [were] made that the 1997 criminal conviction, upon which in part Petitioner's commitment is based, was overturned or set aside or declared void by any appellate court. Even if the Petitioner were correct in his assertions, this did not deprive the criminal court of jurisdiction to hear his case." (*Id*. at CM/ECF p. 26.) Accordingly, the district court found that Jones' petition for habeas corpus did not state a claim upon which relief may granted and, therefore, sustained the motion to quash. (*Id*. at CM/ECF p. 27.)

### 1. Appeal to the Nebraska Court of Appeals

Jones then appealed the district court's decision to the Nebraska Court of Appeals. Jones assigned the following errors:

14

1.      Whether defects in the district court's ruling deprived Appellant of his right to habeas corpus relief.

2.      Whether the district court overlooked the subject matter jurisdiction issue in this case.

3.      Whether there is "a connection or link" the nexus test between the state and the challenged action of the regulated entity the Mental Health Board of Lancaster County.

4.      Whether the district court abused its discretion by not appointing counsel.

(Filing 21-8 at CM/ECF p. 6.) Subsequently, the Appellees submitted their brief (filing 21-9), followed by Jones filing a reply brief, (filing 21-10). On March 3, 2020, the Nebraska Court of Appeals issued its Memorandum Opinion and Judgment on Appeal and affirmed the decision of the Madison County District Court. (Filing 21-11.)

## 2. Petition for Further Review

On March 16, 2020, Jones filed a petition for further review with the Nebraska Supreme Court. (Filing 21-12.) In that petition, Jones alleged the following errors made by the Nebraska Court of Appeals:

1.      The Appellate Court erred in affirming the district court's decision denying Appellant habeas corpus relief.

2.      The Appellate Court erred and overlooked Appellant's claim under Neb. Rev. Stat. §§ 29-2801–71-959(9).

3.      The Appellate Court erred and [sic] affirming the district court's decision denying Appellant appointed counsel.

4.      The Appellate Court erred and overlooked "the Nexus Test claim" of the state and the Lancaster County Mental Health Board.

15

5.     The Appellant [sic] Court erred and [sic] affirming the district court and the Lancaster County court and the Mental Health Board were without subject matter jurisdiction over Appellant and this case.

6.     The Appellate Court erred and overlooked Appellant's claims in his supplemental briefs in the Appellate Court.

(*Id*. at CM/ECF pp. 1–3.) The petition for further review was subsequently denied on May 19, 2020.[3]

## D. Current Federal Habeas Petition

Jones filed a Petition for Writ of Habeas Corpus in Case No. 8:20CV81 on March 2, 2020, and another Petition in Case No. 8:20CV275 on July 9, 2020 (collectively the "Petition"). (Filing 1, Case No. 8:20CV81; Filing 1, Case No. 8:20CV275.) On January 8, 2021, the court consolidated the two cases as both challenged Jones' civil commitment by the Mental Health Board and sought his release from the NRC. (Filing 12.) In accordance with the court's progression order (filing 13), Respondent filed an answer (filing 33), a brief (filing 34), and the relevant state court records (filings 21 & 23). Jones filed a brief in response (filing 38) to Respondent's answer, and Respondent filed a reply brief (filing 41). This matter is fully submitted for disposition.

---

[3] As requested by Respondent, the court takes judicial notice of the Nebraska Court of Appeals docket in Jones' state habeas appeal, *Jones v. Dawson*, A-19-522, showing that Jones' March 16, 2020 petition for further review was denied on May 19, 2020. *See Stutzka v. McCarville*, 420 F.3d 757, 760 at n.2. (8th Cir. 2005) (court "may take judicial notice of judicial opinions and public records"); Federal Rule of Evidence 201 (providing for judicial notice of adjudicative facts). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

## III. OVERVIEW OF APPLICABLE LAW

Two strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default and (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court. The court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Jones' claims.

### A. Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005). "Such exhaustion requirements apply to petitioners seeking review of mental health commitment orders." *Herzog v. Cheyenne Cnty. Mental Health Bd.*, No. 8:08CV255, 2009 WL 1028093, at *1 (D. Neb. Apr. 15, 2009) (citing *Carter v. Bickhaus*, 142 F. App'x 937, 938 (8th Cir. 2005) (unpublished) (holding that a civilly committed petitioner's request for release was a habeas action, noting that the exhaustion requirement applies, and remanding for determination regarding whether the petitioner "has fully exhausted the necessary state procedures to challenge his civil commitment")); *see also Ivey v. Sacriste*, No. 8:19CV153, 2020 WL 6158608, at *8 n.10 (D. Neb. Oct. 21, 2020); *Ivey v. Gibson*, No. 4:07CV3242, 2008 WL 5392136, at *4 n.7 (D. Neb. Dec. 19, 2008).

A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. *O'Sullivan*, 526 U.S. at 844. "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (cleaned up). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (quotation omitted). A habeas claim has not been fairly presented, and is thus procedurally defaulted, if a petitioner, in arguing his claim to the state courts,

"relied solely on state law grounds—namely, that the trial court misapplied . . . state statutes and case law on point." *Carney*, 487 F.3d at 1096.

When reviewing a federal habeas corpus petition, a federal court can only consider those claims which the petitioner has presented to the state court in accordance with state procedural rules. *See Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009). Where a state court rejects a claim on state procedural grounds, and "issues a plain statement that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is "precluded from reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989) (quotation omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). A federal court "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Barnett*, 541 F.3d at 808. (quotation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

19

**B. Nebraska Law Relevant to Procedural Default**

The Nebraska statute governing the findings of the Mental Health Board states:

> The subject of a petition or the county attorney may appeal a treatment order of the mental health board under section 71-1209 to the district court. Such appeals shall be de novo on the record. A final order of the district court may be appealed to the Court of Appeals in accordance with the procedure in criminal cases. The final judgment of the court shall be certified to and become a part of the records of the mental health board with respect to the subject.

Neb. Rev. Stat. § 71-1214. The state court procedure available to Jones under the SOCA "is not a criminal appeal and postconviction proceeding" pursuant to Neb. Rev. Stat. § 29-3001, but it is "nearly identical state-court procedural due process." *Ivey*, 2020 WL 6158608, at *8; *Ivey*, 2008 WL 5392136, at *4.

Furthermore, Neb. Rev. Stat. § 71-959(9) "empowers a subject in custody or receiving treatment under the SOCA '[t]o file, either personally or by counsel, petitions or applications for writs of habeas corpus for the purpose of challenging the legality of his or her custody or treatment.'" *D.I. v. Gibson*, 890 N.W.2d 506, 512 (Neb. 2017). The Nebraska Supreme Court has "repeatedly held that to release a person from a sentence of imprisonment by habeas corpus, it must appear that the sentence was absolutely void." *Mayfield v. Hartmann*, 375 N.W.2d 146, 149 (Neb. 1985). In addition, "[i]t has long been the rule in [Nebraska] that habeas corpus is a collateral proceeding and as such cannot be used as a substitute for an appeal or proceedings in error." *Id.* at 148 (internal quotation omitted).

**C. Deferential Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the

law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405–06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

In short, "[a] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

## IV. DISCUSSION

Respondent maintains in his answer and briefs that Jones has not stated any cognizable federal claim in his Petition as Jones does not identify what federal law or constitutional rights he claims are being violated. (Filing 33 at CM/ECF p. 9; Filing 34 at CM/ECF pp. 3, 37.) However, in his brief in response, Jones argues that his claims raise due process violations as well as a Sixth Amendment violation in Claim Four. (*See, e.g.*, Filing 38 at CM/ECF pp. 2–3, 10.) Even assuming Jones'

claims implicate these constitutional provisions, the court finds that Jones has procedurally defaulted all of his claims without excuse, and he is not entitled to any habeas relief.

## A. Jones' Claims are Procedurally Defaulted

Jones did not fairly present any federal claim regarding Claims One through Four in one complete round of review through the Nebraska state courts as required by 28 U.S.C. § 2254(b)(1). Because he can no longer assert any such federal law claims to the state courts, Jones has not only failed to exhaust any potential federal claim, but he has also procedurally defaulted them.

In his brief, Jones argues that Claims One through Four assert due process violations. (*See* Filing 38 at CM/ECF pp. 2–3.) However, in Jones' direct appeal pro se briefs, his arguments in support of his assigned errors relied solely on state law. (*See, e.g.*, Filing 21-2 at CM/ECF p. 10 (arguing Mental Health Board lacked jurisdiction because "criminal citation and complaint has not been filed in the county nor district courts of Lancaster County, Nebraska, pursuant to Neb. Rev. Stat. § 29-423 (Reissue 2016)"); *Id.* at CM/ECF p. 11 (criminal complaint and information in Jones' 1997 conviction "is defective on its face because it was not issued and filed in conformity with Neb. Rev. Stat. § 29-424 (Reissue 2016)"); *see generally Id.* at CM/ECF pp. 10–15; Filing 21-5.) Jones' pro se briefs made only two vague, passing references to the United States Constitution. First, Jones asserted that he raised three issues below "that would establish a violation of rights secured by the Nebraska and United States Constitution." (Filing 21-2 at CM/ECF p. 5; Filing 21-5 at CM/ECF p. 5.) Second, Jones' concluded both his initial and reply briefs with the broad allegation that his rights under "the United States Constitution Amendments 4 Fourth, 5 Fifth, 6 Sixth, 9 Ninth, and 14 Fourteenth were violated when Appellant's [sic] was denied due process of law by the Mental Health Board when it acted arbitarily [sic] and unreasonably without subject matter jurisdiction by ordering involuntary inpatient treatment of Appellant [sic]." (Filing 21-2 at CM/ECF p. 15; *see also* Filing 21-5 at CM/ECF

p. 16.) Jones' general references to "due process" and "a violation of rights secured by the . . . United States Constitution" are not enough to present a substantive constitutional claim. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996) ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."). Fair presentation of a federal constitutional claim requires the petitioner to make the federal basis of the claim explicit to the state court, either by citing federal law or decisions of federal courts. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Jones cited exclusively to state statutes and state court decisions in arguing his claims on direct appeal, and, consequently, the Nebraska Court of Appeals decided his claims solely based on state law. Thus, Jones failed to adequately indicate that he was asserting a violation of his federal constitutional due process rights. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (holding that a petitioner's failure to identify a federal claim or to cite case law which might alert the state court to the federal nature of a claim is not fair presentation); *Gray*, 518 U.S. at 163.

Jones also asserts that Claim Four implicates the Sixth Amendment right to effective assistance of counsel. (Filing 38 at CM/ECF p. 10.) As mentioned above, Jones did make a passing reference to the Sixth Amendment in his pro se direct appeal briefs. (Filing 21-2 at CM/ECF p. 15; *see also* Filing 21-5 at CM/ECF p. 16.)[4] The appellate brief filed by Jones' counsel also mentioned this constitutional provision in arguing that the Mental Health Board erred when it found the Lancaster County Public Defender's Office did not have a conflict of interest. (Filing 21-3 at CM/ECF p. 20 ("An 'actual conflict of interest,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's

---

[4] In the argument sections of Jones' appellate briefs, however, he appears to argue that his counsel's conflict of interest and failure to raise certain claims deprived him of due process under the Nebraska Constitution only. (Filing 21-2 at CM/ECF p. 14; Filing 21-5 at CM/ECF p. 15.)

23

performance." (citing *State v. Aldaco*, 710 N.W.2d 101, 109 (Neb. 2006)).) Arguably, the citation to the Sixth Amendment in Jones' counsel's brief could be considered sufficient to fairly present Jones' federal claim to the Nebraska state courts. However, Jones failed to present his Sixth Amendment claim in his petition for further review to the Nebraska Supreme Court and, thus, failed to present the claim through one complete round of review in the state courts. (Filing 23-4 at CM/ECF p. 6 (arguing that his attorney "fail[ed] to act with reasonable care" and citing to his pro se briefs on direct appeal in support of his claim that a conflict of interest existed).)

Indeed, Jones failed to present any constitutional claim in his petition for further review to the Nebraska Supreme Court and, therefore, failed to exhaust any potential cognizable federal claim on direct appeal. (*See* Filing 23-4 at CM/ECF pp. 2–12.) As Jones has already pursued an appeal and petition for further review of the Mental Health Board's August 21, 2018 SOCA commitment order, he cannot now present any additional federal claims before the state courts via a direct appeal. *See* 28 U.S.C. § 2254(b)(1); *Ivey*, 2020 WL 6158608, at *8 ("[T]he prosecution of an appeal to the Nebraska Court of Appeals, and a petition to the Nebraska Supreme Court for further review, are required for exhaustion of state court remedies by one challenging a commitment under SOCA . . . ."). Thus, Jones' federal claims are procedurally defaulted.

Likewise, Jones is foreclosed from presenting any federal law claims related to his 2018 SOCA commitment pursuant to Nebraska's habeas corpus statute. Individuals committed pursuant to the SOCA may "file, either personally or by counsel, petitions or applications for writs of habeas corpus for the purpose of challenging the legality of his or her custody or treatment." Neb. Rev. Stat. § 71-959(9); *see also D.I. v. Gibson*, 890 N.W.2d at 512.

Jones prosecuted a state habeas action in the District Court of Madison County, Nebraska, which he appealed to the Nebraska Court of Appeals, followed by a petition for further review to the Nebraska Supreme Court. In his state habeas

24

petition and brief on appeal, Jones broadly alleged he was "being unlawfully deprived of his liberty in violation of his rights guaranteed to him by the Fourth (4th); Fifth (5th); Sixth (6th); and Fourteenth (14th) Amendments to the United States Constitution Article 1, Sections 3, 11, and 12 of the Nebraska Constitution, and the Sex Offender Commitment Act." (Filing 21-7 at CM/ECF p. 2; *see also* Filing 21-8 at CM/ECF p. 5.) However, Jones did not articulate how his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were being violated in his petition, appellate briefs, and petition for further review. (*See* Filings 21-7, 21-8, 21-10, & 21-12.) Rather, Jones relied on state statutes and case law in arguing his state habeas claims to the Nebraska courts. (*See, e.g.*, Filing 21-7 at CM/ECF p. 3 (failure to file criminal complaint and information in his 1997 conviction at least twenty-four hours prior to arraignment "[p]ursuant to Neb. Rev. Stat. § 29-424" . . . violated Jones' "due process rights . . . under the United States Constitution"); *Id.* at CM/ECF p. 5 ("Petitioner's due process rights are violated by being seized and unlawfully detained without proper statutory authority [and] the continued detention and deprivation of Petitioner's liberty is unlawful and contravenes Neb. Rev. Stat. §§§§§ [sic] 29-404, 29-423, 29-424, 29-4003, and 71-959(9).").) Again, the court finds Jones' general references to "due process" and various constitutional amendments without any substantive argument are not enough to fairly present the substance of those constitutional claims. *See Gray*, 518 U.S. at 163.

Even if Jones' did fairly present his constitutional claims to the Nebraska state courts, his claims would have been outside the scope of state habeas corpus and, therefore, unavailable to Jones. In Nebraska, habeas corpus is quite limited in comparison to the scope of the writ in federal courts. *Sanders v. Frakes*, 888 N.W.2d 514, 520 (Neb. 2016); *Gonzalez v. Gage*, 861 N.W.2d 457, 461 (Neb. 2015). Under Nebraska law, an action for habeas corpus is a collateral attack on a judgment of conviction. *Sanders*, 888 N.W.2d at 520. A collateral attack on a judgment is where the judgment is attacked in a way other than a proceeding in the original action to have it vacated, reversed, or modified, or a proceeding in equity to prevent its enforcement. *Id.*

Absent statutory authority to the contrary, only a void judgment may be collaterally attacked. *Id.* A judgment that is not void, even if erroneous, cannot be collaterally attacked. *Id.* A judgment is void when the court rendering it lacks subject matter or personal jurisdiction. *Id.* at 521. Where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack. *Id.* at 520. Habeas corpus is available as a remedy only upon a showing that the judgment, sentence, and commitment are void. *See id.* The writ of habeas corpus will not lie upon the ground of mere errors and irregularities in the judgment, nor may it be used as a substitute for an appeal. *Id.*; *see also Flora v. Escudero*, 526 N.W.2d 643, 648 (Neb. 1995) (a writ of habeas corpus ordinarily will not be granted where another adequate remedy exists).

In his state habeas action, Jones referred to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and in the present federal habeas case, Jones raises due process claims, presumably under the Fourteenth Amendment, and a Sixth Amendment ineffective assistance of counsel claim. (Filing 21-7 at CM/ECF p. 2; Filing 21-8 at CM/ECF p. 5; Filing 38 at CM/ECF pp. 2–3, 10.) None of these claims provide a proper ground for granting a writ of habeas corpus in Nebraska. *See Peterson v. Houston*, 824 N.W.2d 26, 34 (Neb. 2012) (claims of double jeopardy, actual innocence, miscarriage of justice, malicious prosecution, judicial bias, ineffective counsel, and conflict of interest do not provide a proper ground for granting a writ of habeas corpus in Nebraska). "Where jurisdiction has attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void." *Id.* (quotation omitted).

The only cognizable habeas claim in Nebraska is that the judgment is void because the court rendering it lacked subject matter or personal jurisdiction. *Sanders*, 888 N.W.2d at 521. In Claim One, Jones alleges the Mental Health Board lacked subject matter jurisdiction to enter a civil commitment order against Jones

because his 1997 conviction was unlawful due to alleged defects in the charging instruments. "Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved." *Martinez v. Dawson*, No. A-19-696, 2020 WL 1487278, at *3 (Neb. Ct. App. Mar. 24, 2020) (citing *In re Interest of Jeremy U. et al.*, 936 N.W.2d 733 (Neb. 2020)). The Nebraska Court of Appeals considered and rejected Jones' claim on direct appeal from the Mental Health Board's order, finding that the alleged defects in Jones' 1997 conviction did not divest the Mental Health Board of authority over Jones. (Filing 21-6 at CM/ECF p. 8.) The court explained:

> Nebraska statutes give each presiding judge in each judicial district the authority to create mental health boards and empowers the board to carry out its duties. Neb. Rev. Stat. § 71-915 (Reissue 2018). "Mental health board proceedings shall be deemed to have commenced upon the . . . filing of a petition under section 71-1205." § 71-1206. The petition in this case was filed by the Lancaster County Attorney on June 26, 2018, pursuant to the provisions of the SOCA, and alleged that [Jones] is a mentally ill and dangerous sex offender, unable to control his behavior, for whom involuntary inpatient treatment is required. Since the petition against [Jones] made allegations within the purview of the Board and was properly filed, the Board had jurisdiction over the matter and over [Jones].

(*Id.*)

The Nebraska Court of Appeals' determination that the Mental Health Board had jurisdiction over the petition to commit Jones under the SOCA is conclusive on that issue. *Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996) ("Because a determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary, the decision of the court of appeals finding state court had jurisdiction conclusively establishes that the trial court had jurisdiction over [petitioner]." (cleaned up)). Thus, the Mental Health

Board's commitment order is not void, and any collateral attack based on Jones' habeas claims would be impermissible.

Because Jones is now barred from presenting his federal habeas claims to the Nebraska state courts, these claims are procedurally defaulted, not just unexhausted. *See Armstrong*, 418 F.3d at 926; *Akins*, 410 F.3d at 456 n.1. The court also concludes Jones has not demonstrated any cause or prejudice to excuse his defaulted claims, which the court will address below in discussing Jones' claims.

## B. Discussion of Claims

Alternatively, the court finds that Jones' claims are either not cognizable grounds for habeas relief or meritless.

### 1. Claim One

In Claim One, Jones alleges the Mental Health Board lacked subject matter jurisdiction to enter a civil commitment order against Petitioner because (1) the August 30, 1996 criminal citation and complaint was not filed in the state county or district court pursuant to Neb. Rev. Stat. § 29-423 (Reissue 2016), and (2) the criminal information filed against him on September 3, 1996, was not filed 24 hours prior to his arraignment as required by Neb. Rev. Stat. § 29-424 (Reissue 2016). Essentially, Jones argues that the Mental Health Board lacked subject matter jurisdiction because his 1997 conviction for first degree sexual assault of a child was unlawful due to defects in the charging instruments.

As discussed above, the Nebraska Court of Appeals rejected this argument in Jones' direct appeal from his SOCA commitment because Jones "d[id] not explain how this fact divests the Board of any authority over him." (Filing 21-6 at CM/ECF p. 8.) The court concluded the Mental Health Board had jurisdiction to hear the petition and enter a commitment order under the SOCA, and that

determination is conclusive here. (*Id.*) *See Rhode*, *supra*. Moreover, the Nebraska Court of Appeals elaborated on why Jones' argument lacks merit in his state habeas appeal. The court explained:

> In his petition, Jones alleged that his 1997 conviction was unlawful because the State failed to file the complaint against him at least 24 hours prior to his arraignment as is required by Neb. Rev. Stat. § 29-1802 (Reissue 2016) and failed to ever file the "citation ticket which warranted his arrest." Even if Jones' assertions were true, such defects in the manner in which the charging documents were filed would not divest the district court with subject matter jurisdiction to hear the case.

> Pursuant to Neb. Rev. Stat. § 24-302 (Reissue 2016), district courts are vested with general, original, and appellate jurisdiction over civil and criminal matters. The district court clearly had jurisdiction over the criminal complaint which alleged that Jones had committed first degree sexual assault of a child. Jones has not alleged any facts to demonstrate that the district court was ever divested of that jurisdiction. The fact that a complaint or information is fatally defective does not deny the trial court jurisdiction to issue any order relating to those purported charges. See *Peterson v. Houston*, *supra*. No complaint or information shall be deemed invalid for any defect or imperfection which does not prejudice the substantial rights of the defendant upon the merits. See *id*.

> Moreover, the 24-hour waiting period between service of the criminal complaint and arraignment may be waived. *Kopp v. State*, 124 Neb. 363, 246 N.W. 718 (1933). In fact, the Supreme Court has held that the failure of the record to show that the defendant made any objection to proceed with the trial on the charges raises the presumption that he or she waived that right. *State v. High*, 225 Neb. 695, 407 N.W.2d 772 (1987). In his petition for writ of habeas corpus, Jones did not allege that he ever objected to being served with the criminal complaint less than 24 hours prior to his arraignment. As such, we can presume that even if his allegation regarding the timing of the service and the arraignment is true, that he waived his right by proceeding with trial.

Furthermore, the State is not required to file a citation with the district court. Neb. Rev. Stat. § 29-423 (Reissue 2016), provides, in pertinent part, "The court may provide that a copy of the citation shall constitute the complaint filed in the trial court." However, there is nothing in that statutory section which would compel the State to file the citation in addition to a criminal complaint.

(Filing 21-11 at CM/ECF pp. 4–5.) The Nebraska Court of Appeals' conclusion is sound, and there is no merit to Jones' claim regarding the Mental Health Board's lack of jurisdiction or the unlawfulness of his 1997 conviction.

Moreover, the question of whether Jones was convicted of a sex offense in 1997 goes to the merits of whether he met the statutory definition of a "dangerous sex offender" under the SOCA, not to whether the Mental Health Board had jurisdiction.[5] *See Martinez*, 2020 WL 1487278, at *4 (petitioner's claim that the crime he was convicted of did not fit under the definition of "sex offense" was not jurisdictional, but rather a collateral attack on the merits of the mental health board's determination regarding one of the elements that the State was required to prove to show he was a dangerous sex offender); *see also In re Interest of K.W.*,

---

[5] As provided in Neb. Rev. Stat. § 83-174.01:

> (1) Dangerous sex offender means (a) a person who suffers from a mental illness which makes the person likely to engage in repeat acts of sexual violence, *who has been convicted of one or more sex offenses*, and who is substantially unable to control his or her criminal behavior or (b) a person with a personality disorder which makes the person likely to engage in repeat acts of sexual violence, *who has been convicted of two or more sex offenses*, and who is substantially unable to control his or her criminal behavior;

> (2) Likely to engage in repeat acts of sexual violence means the person's propensity to commit sex offenses resulting in serious harm to others is of such a degree as to pose a menace to the health and safety of the public[.]

*Id.* (emphasis added).

895 N.W.2d 721, 727 (Neb. Ct. App. 2017) (second element State was required to prove to show individual was dangerous sex offender under § 83-174.01(1) was that he had been convicted of at least one sex offense if he suffered from mental illness or at least two sex offenses if he suffered from personality disorder). Likewise, the merits question of whether Jones is a dangerous sex offender, as defined by Neb. Rev. Stat. § 83-174.01, does not raise a federal constitutional claim. *See Ivey v. Gibson*, No. 8:12CV61, 2012 WL 4370669, at *3 (D. Neb. Sept. 21, 2012) (a claim that the Mental Health Board erred in finding a person a dangerous sex offender, as defined in Neb. Rev. Stat. § 83-174.01, does not constitute a federal law claim).

Additionally, to the extent Jones attempts to collaterally attack his 1997 conviction in the present habeas proceeding, the court agrees with Respondent that Jones is prohibited from doing so.

First, Jones is not "in custody" pursuant to his 1997 conviction as his sentence had fully expired at the time he filed the present Petition. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only for persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (emphasis in original) (quoting 28 U.S.C. § 2254(a)); *see also Leonard v. Nix*, 55 F.3d 370, 372–73 (8th Cir. 1995); *Weaver v. Pung*, 925 F.2d 1097, 1099 (8th Cir. 1991), *cert. denied*, 502 U.S. 828 (1991). The Supreme Court interprets the "statutory language as requiring that the petitioner be 'in custody' under the conviction or sentence under attack at the time" the petitioner files the habeas petition. *Maleng*, 490 U.S.at 490–91 (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *see also Weaver*, 925 F.2d at 1099 ("Custody is tested at the time of filing the petition. A person must be in custody under the conviction or sentence attacked at the time of filing. A person whose sentence has fully expired at the time his petition is filed can not satisfy the custody requirement." (internal citations omitted)). "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not

themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng*, 490 U.S. at 492. Jones' civil commitment under the SOCA is only a collateral consequence that does not render him in custody for purposes of attacking his 1997 conviction. *See Stanbridge v. Scott*, 791 F.3d 715, 720–21 (7th Cir. 2015) (holding that civilly committed sex offender was no longer in custody on his prior conviction for criminal sexual abuse because the restraint of his civil commitment was not a direct consequence of his criminal conviction but rather only a collateral consequence); *see also George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984) (holding that the possibility of confinement pursuant to civil commitment proceedings after the expiration of a criminal sentence is a collateral consequence).

Second, the court cannot review any claims attacking Jones' 1997 conviction as such claims would constitute a successive habeas petition under 28 U.S.C. § 2244(b). Jones has challenged his 1997 conviction on at least three previous occasions in this court. *See Jones v. Kenney*, Case No. 4:00CV3002 (D. Neb.); *Jones v. Britten*, Case No. 4:03CV3083 (D. Neb.); *Jones v. Gage*, Case No. 8:14CV01 (D. Neb). Thus, Jones would be required to seek the permission of the Eighth Circuit Court of Appeals to commence this successive action, and he has not done so. *See* 28 U.S.C. § 2444(b)(2) & (3)(A).

Jones seeks to overcome these hurdles to attacking his 1997 conviction, as well as any procedural default of his habeas claims, by asserting that he is actually innocent. However, whether Jones is actually innocent of his 1997 conviction for first degree sexual assault of a child does not necessarily suggest that any procedural defaults related to Jones' commitment under the SOCA should be excused. Rather, Jones' alleged innocence of his 1997 conviction appears to go to the merits of whether he is a "dangerous sex offender" under the SOCA, which, as discussed earlier, does not present a cognizable federal habeas claim.

In any case, the court finds that Jones falls far short of meeting the exacting standard to demonstrate actual innocence. To obtain review of an otherwise

procedurally barred claim based on actual innocence, a petitioner must satisfy a two-part test: (1) the "allegations of constitutional error must be supported with new reliable evidence not available at trial"; and (2) "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (citing *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)); *accord Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001). Actual innocence means factual innocence, not legal innocence or legal insufficiency. *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993). Here, Jones has not produced evidence in support of a claim that he is actually innocent. He offers only speculation that so-called newly discovered evidence which he knew about in 1997 may "exonerate" him. (Filing 38 at CM/ECF p. 24.) Moreover, the crux of his innocence claim is a legal innocence argument based on alleged defects in the charging instruments used in his 1997 conviction, which the Nebraska state courts have clearly and reasonably rejected. For these reasons, the court finds Jones' actual innocence claim fails and does not excuse any procedural default.

Based on the foregoing, the court finds that Claim One fails to state a claim for federal habeas relief and lacks merit.

### 2. Claim Two

In Claim Two, Jones alleges the Mental Health Board used inadmissible and insufficient evidence to find him a dangerous sex offender, including evidence of a prior criminal conviction more than 10 years old and an evaluation that was not timely completed prior to Jones' release from prison. As framed in the Petition and as presented to the state courts, Claim Two only involves issues of state law, which do not serve as a basis for federal habeas relief.

First, Jones claims that Dr. Stairs' "evaluation wasn't completed within 180 days" of his release from prison in violation of Neb. Rev. Stat. § 83-174.02.[6]

---

[6] In relevant part, Neb. Rev. Stat. § 83.174.02 provides:

(Filing 1 at CM/ECF p. 18; *see also* Filing 21-2 at CM/ECF p. 15; Filing 21-3 at CM/ECF p. 18.) As Respondent notes, it is unclear whether Jones raised this claim in his direct appeal petition for further review. (*See* Filing 23-4 at CM/ECF pp. 2–12.) Assuming that Jones did, his claim rests solely on state law. What's more, the Nebraska Court of Appeals expressly rejected Jones' claim as the state statute on which his claim rests does not create any substantive or procedural rights. The court explained:

> The Supreme Court has considered the meaning of § 83-174.02 and has concluded:
>
>> The time periods mentioned in § 83-174.02(2) designate when DCS shall provide information to prosecutors, but the statute does not prescribe any type of notice to the offender. We conclude that § 83-174.02 provides a mechanism for identifying potentially dangerous sex offenders prior to their release from incarceration and for notifying prosecuting authorities so that they will have adequate time to determine whether to file a petition under SOCA before the offender's release date. But the statute does not create any substantive or procedural rights in the offender who is the subject of the mental health evaluation.
>
> *In re Interest of D.H.*, 281 Neb. 554, 56l, 797 N.W.2d 263, 269 (2011). The statute does not pertain to Board proceedings and does not restrict a Board's consideration of evaluations, even if they were

---

(2) The evaluation required by this section shall be ordered at least one hundred eighty days before the scheduled release of the individual. Upon completion of the evaluation, and not later than one hundred fifty days prior to the scheduled release of the individual, the department shall send written notice to the Attorney General, the county attorney of the county where the offender is incarcerated, and the prosecuting county attorney. The notice shall contain an affidavit of the mental health professional describing his or her findings with respect to whether or not the individual is a dangerous sex offender.

not provided to county attorneys within the required time frames. We note [Jones'] disagreement with *In re Interest of D.H.*, *supra*, but this court is bound by the decisions of the Nebraska Supreme Court. As a result, this argument fails.

(Filing 21-6 at CM/ECF pp. 7–8.)

Jones' claim as to whether Dr. Stairs conducted her evaluation within the time limits provided by statute is purely an issue of state law, and state interpretation of that law. Thus, Jones' claim is not cognizable in federal habeas. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (quotation omitted)).

Next, Jones alleges that the Mental Health Board used inadmissible evidence of prior convictions more than 10 years old in violation of Neb. Rev. Stat. § 27-609(2), which prohibits admission of evidence of a conviction more than 10 years old to impeach a witness' credibility.[7] (Filing 1 at CM/ECF p. 10; Filing 38 at CM/ECF p. 3.) Jones did not present this claim to the state courts as a constitutional claim but rather as a claim based entirely on state law. (*See* Filing 21-2 at CM/ECF pp. 12–13.) Thus, this claim does not present a justiciable federal issue. *See Clark v. Bakewell*, No. 4:07CV166, 2007 WL 2572442, at *4 (D. Neb. Sept. 5, 2007) ("'The admissibility of evidence is usually a matter of state law and procedure and does not involve federal constitutional issues.'" (quoting *Davis v. Campbell*, 608 F.2d 317, 319 (8th Cir.1979)) (alterations in original)).

---

[7] Jones asserts in his brief that the Mental Health Board's admission of his prior convictions also violated Fed. R. Evid. 609. (Filing 38 at CM/ECF p. 3.) However, this Federal Rule of Evidence is inapplicable to Jones' state civil commitment proceedings. *See Tscheu v. Smith*, No. CV 13-2099 (JNE/FLN), 2015 WL 9699505, at *9 (D. Minn. Nov. 19, 2015), *report and recommendation adopted*, No. CV 13-2099 (JNE/FLN), 2016 WL 126356 (D. Minn. Jan. 11, 2016) ("Federal Rule of Evidence 609 . . . [and] the Federal Rules of Evidence are inapplicable to Petitioner's state court proceedings . . . ."). Jones also did not assert a violation of Fed. R. Evid. 609 in the state courts.

In addition, Jones procedurally defaulted his claim by failing to raise it before the state district court in his direct appeal. As a result, the Nebraska Court of Appeals declined to consider the issue because "in reviewing decisions of [the] district court, [a] higher appellate court will only consider errors specifically assigned in appeal to district court and again assigned as error in appeal to higher appellate court." (Filing 21-6 at CM/ECF p. 9 (citing *State v. Feiling*, 585 N.W.2d 456 (Neb. 1998)).) The Nebraska Court of Appeals issued a plain statement that it was rejecting Jones' claim on independent and adequate state procedural grounds. *See Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008). Thus, this court is precluded from reaching the merits of Jones' claim.

Accordingly, Claim Two fails to present a federal claim that is properly before the court.

### 3. Claim Three

In Claim Three, Jones alleges the county attorney failed to investigate the evidence prior to filing a petition with the Mental Health Board. Liberally construed, Jones claims that the county attorney had a statutory duty to investigate Jones' claim that his 1997 conviction was unlawful, thereby depriving the Mental Health Board of jurisdiction. The court finds Jones' claim meritless.

Again, Jones' claim is based entirely on state law, namely Neb. Rev. Stat. § 71-1217. That section provides that, upon receipt of a report from a provider of outpatient treatment to a subject receiving board-ordered outpatient treatment, "the county attorney shall have the matter investigated to determine whether there is a factual basis for the report." Neb. Rev. Stat. § 71-1217. However, nothing in this statute obligates the county attorney to investigate Jones' claim that his 1997 conviction was unlawful. As such, Claim Three does not invoke a federal right and is completely lacking in merit.

### 4. Claim Four

Lastly, in Claim Four, Jones alleges he was denied the effective assistance of counsel because his appointed counsel had a conflict of interest and failed to raise the following issues before the Mental Health Board, the state district court, and the appellate courts: (1) subject matter jurisdiction; (2) inadmissible evidence; (3) insufficient evidence; (4) the county attorney's failure to investigate the evidence; (5) the Mental Health Board used inadmissible and insufficient evidence against Petitioner; and (6) the county attorney used inadmissible and insufficient evidence against Petitioner.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "By its express terms, this right extends only to criminal proceedings." *Maati v. Nebraska*, No. 8:12CV314, 2014 WL 36287, at *10 (D. Neb. Jan. 6, 2014). Jones' commitment is the result of a civil proceeding. *See id.* The Sixth Amendment does not extend a right to effective assistance of counsel to civil commitment proceedings. *See id.*; *see also United States v. O'Laughlin*, 934 F.3d 840, 841 (8th Cir. 2019) (a civil commitment proceeding under 18 U.S.C. § 4246 is not a criminal prosecution for purposes of the Sixth Amendment), *cert. denied*, 140 S. Ct. 2535 (2020); *Kansas v. Hendricks*, 521 U.S. 346, 349 (1997) (holding that the double jeopardy clause of the Fifth Amendment does not apply to a civil commitment proceeding); *Allen v. Illinois,* 478 U.S. 364 (1986) (holding that the Fifth Amendment right against self-incrimination does not apply in civil commitment proceedings); *Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005) (holding that the confrontation clause of the Sixth Amendment does not apply in civil commitment proceedings); *United States v. Veltman*, 9 F.3d 718, 721 (8th Cir. 1993) (recognizing only a *statutory* right to counsel in a civil commitment proceeding, as opposed to a constitutional right to counsel); *Favors v. Jesson*, No. CIV. 14-3473 JRT/LIB, 2015 WL 4919969, at *7 (D. Minn. Aug. 12, 2015) (Sixth Amendment rights did not attach during petitioner's underlying civil

commitment proceedings; rather, petitioner's right to counsel at that time was merely statutory); *Beaulieu v. Minn. Dep't of Human Servs.*, 798 N.W.2d 542, 548 (Minn. Ct. App. 2011) ("[T]he Sixth Amendment right to the effective assistance of counsel does not apply in a civil-commitment proceeding.").

Sixth Amendment rights did not attach during Jones' underlying civil commitment proceedings. Rather, Jones' right to counsel at that time was merely statutory. *See* Neb. Rev. Stat. § 71-945 ("A subject shall have the right to be represented by counsel in all proceedings under the Nebraska Mental Health Commitment Act or the [SOCA]."); *Maati*, 2014 WL 36287, at *11 ("Nebraska state statutes set forth that Petitioner had a right to be represented by counsel in the civil commitment proceedings."). Accordingly, the court determines that Jones' ineffective assistance of counsel claims do not invoke a federal right and therefore are not properly before the court. *See Maati*, 2014 WL 36287, at *10. Claim Four fails.

Additionally, because there is no constitutional right to the effective assistance of counsel in a civil commitment proceeding, Jones cannot use his ineffective assistance of counsel claim to excuse the procedural default of any of his habeas claims. (*See* Filing 38 at CM/ECF pp. 16–18.) Jones also procedurally defaulted his ineffective assistance claim when he failed to present the claim as a constitutional one in his petition for further review on direct appeal. (*See* Filing 23-4 at CM/ECF p. 6.) This prevents Jones from using his ineffective assistance of counsel claim to excuse his procedural default regarding any other claims because "[a] claim of ineffective assistance of counsel must be presented to the state court as an independent claim before it may be used to establish cause for procedural default or denominated as a ground for habeas relief." *Leggins v. Lockhart*, 822 F.2d 764, 768 n.5 (8th Cir. 1987) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Thus, Jones cannot establish cause for procedurally defaulting his claims based on the alleged ineffective assistance of counsel.

## C. Conclusion

The court has disposed of all Jones' claims and will dismiss this matter in its entirety. However, the court will do so without prejudice to reassertion because Jones may challenge his confinement at a later time if he exhausts his state remedies following a mental health board's new or modified treatment order under the SOCA.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that Jones is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.      The Petition for Writ of Habeas Corpus (Filing 1, Case No. 8:20CV81; Filing 1, Case No. 8:20CV275) is dismissed without prejudice. No certificate of appealability has been or will be issued.

2.      Judgment will be issued by separate document.

Dated this 12th day of July, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge